# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

TAMARA L. ALLEN,

                                        Plaintiff,

            v.                                              5:14-CV-1576
                                                            (DNH/ATB)

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.

HOWARD D. OLINSKY, ESQ. & NATHANIEL V. RILEY, ESQ., for Plaintiff
SERGEI ADEN, Special Asst. U.S. Attorney, for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## REPORT-RECOMMENDATION

This matter was referred to me for report and recommendation by the Honorable

David N. Hurd, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local

Rule 72.3(d). This case has proceeded in accordance with General Order 18.

## I.    PROCEDURAL HISTORY

On April 27, 2012, plaintiff protectively filed[1] applications for Disability

Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") Benefits,

alleging disability beginning June 15, 2011. (Administrative Transcript ("T.") at 23,

147-64). Plaintiff's claims were denied initially on June 27, 2012. (T. 23, 74-75).

---

[1] When used in conjunction with an "application" for benefits, the term "protective filing" indicates that a written statement, "such as a letter," has been filed with the Social Security Administration, indicating the claimant's intent to file a claim for benefits. *See* 20 C.F.R. §§ 404.630, 416.340. There are various requirements for this written statement. *Id.* If a proper statement is filed, the Social Security Administration will use the date of the written statement as the filing date of the application even if the formal application is not filed until a later date.

Plaintiff testified at a hearing, which was held by video conference on April 10, 2013 before Administrative Law Judge ("ALJ") Bruce S. Fein. (T. 42-73). The ALJ issued a decision denying the applications on July 9, 2013. (T. 20-40). The ALJ's determination became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on October 22, 2014. (T. 1-6).

## II. APPLICABLE LAW

### A. Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920 to evaluate disability insurance and SSI disability claims.

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Commissioner next

2

considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Commissioner will consider him [per se] disabled . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform.

*Selian v. Astrue*, 708 F.3d 409, 417-18 (2d Cir. 2013) (quoting *Talavera v. Astrue*, 697 F3d 145, 151 (2d Cir. 2012)); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that his impairment prevents him from performing his past work, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do." *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009); *Selian*, 708 F.3d at 418 & n.2.

## B.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian*, 708 F.3d at 417; *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Talavera*, 697 F.3d at 151 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It must be "more than a scintilla" of evidence scattered throughout the

administrative record. *Id.* However, this standard is a very deferential standard of review " – even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision. *Id*. *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony). However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III. FACTS

As of the date of the administrative hearing in June 2013, plaintiff was 31 years old. (T. 48). She resided with her husband and three children, ages fourteen, twelve, and seven. (T. 49). Plaintiff developed back pain in 2004, and had been treated with physical therapy, epidural nerve blocks, and pain medication. (T. 416). Plaintiff

4

testified that the pain had increased since June of 2011, and it had begun to radiate down her right hip and into her leg, causing numbness. (T. 57). She also testified that the pain had forced her to call into work on several occasions, prevented her from performing household chores that required lifting, limited her ability to care for and play with her children, and made it difficult to sleep. (T. 63-64). Due to a fear of falling, plaintiff kept a cane with her. (T. 58). Plaintiff had also been diagnosed with depression and anxiety, impairments that plaintiff viewed as stemming from her back pain and the resulting limitations. (T. 62).

Plaintiff completed high school, in regular education classes. (T. 50, 411). Her employment history included work as a nurse's aide at an assisted living facility, a cashier, and assistant manager at a retail store. (T. 183). Plaintiff testified that she left her position as a retail assistant manager in June 2011 because it required her to regularly lift fifty pounds, unload inventory from trucks and to be on her feet for nine hours a day. (T. 56). At the time of the hearing, plaintiff worked three days a week as a home health aide for a quadriplegic patient, for a total of nine to fifteen hours per week. (T. 51, 202).

The ALJ's decision provides a detailed statement of the medical and other evidence of record. (T. 14-16, 18-20). Rather than reciting this evidence at the outset, the court will discuss the relevant details below, as necessary to address the issues raised by plaintiff.

IV.   **ALJ's DECISION**

As an initial matter, the ALJ determined that plaintiff met the insured status

requirement for DIB benefits through December 31, 2015. (T. 25). At step one of the sequential analysis, the ALJ considered plaintiff's part-time employment status and found that plaintiff had not engaged in substantial gainful activity since the alleged onset of disability on June 15, 2011. (T. 25). Next, the ALJ determined that plaintiff's degenerative disc disease of the lumbar spine was a severe impairment. (T. 25-26). The ALJ concluded that plaintiff's other impairments, including knee pain, hip pain, and adjustment disorder with mixed anxiety and depression were not severe. (T. 26-28). At the third step, the ALJ determined that plaintiff's impairments did not meet or medically equal the criteria of the listed impairments in Appendix 1 to 20 C.F.R. Part 404, Subpart P. (T. 28).

The ALJ next concluded that plaintiff retained the RFC to perform less than the full range of light work, and plaintiff could lift and/or carry ten pounds frequently and twenty pounds occasionally; could stand and/or walk for six hours in an eight hour day; could sit for six hours in an eight hour day; and could occasionally engage in all postural activities, including bending, stooping, crawling, kneeling, crouching, and climbing. (T. 29-33). While the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, the ALJ decided that plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were not credible, because they were not supported by evidence in the record. (T. 29).

At step four, the ALJ concluded that plaintiff could perform her past relevant work as a retail store manager or cashier/checker, as those jobs were generally

performed in the national economy. (T. 33). In light of plaintiff's testimony that her prior retail employment regularly required her to lift fifty pounds, the ALJ determined that plaintiff would not be able to meet the physical demands of her past relevant work as it was actually performed. (*Id*.). The ALJ proceeded to step five and determined that there were also other jobs that existed in significant numbers in the national economy that plaintiff could perform. (T. 34.) Therefore, the ALJ determined that plaintiff had not been under a disability from the alleged onset date of June 15, 2011 through the date of his decision. (T. 35).

## V.   ISSUES IN CONTENTION

Plaintiff makes the following claims:

(1)   The ALJ improperly weighed the medical opinion evidence, and his RFC determination was not supported by substantial evidence. (Pl.'s Br. at 12-17) (Dkt. No. 15).

(2)   The ALJ erred in evaluating plaintiff's credibility. (Pl.'s Br. at 17-20).

(3)   The ALJ did not properly consider plaintiff's non-exertional limitations and should have obtained the testimony of a vocational expert ("VE"). (Pl.'s Br. at 20-23).

Defendant argues that the Commissioner's decision was supported by substantial evidence. (Def.'s Br. at 5-20) (Dkt. No. 16). As discussed below, this court agrees with defendant and will recommend dismissal of the complaint.

## VI.  RFC/TREATING PHYSICIAN/CREDIBILITY

### A.  Legal Standards

#### 1.  RFC

Residual functional capacity ("RFC") is "what [the] individual can still do despite his or her limitations.  Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ."  A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations.  20 C.F.R. §§ 404.1545, 416.945.  *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999). An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities.  *Id.* (citing, *inter alia*, *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984)).  RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations.  *Id.* (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence.  *Trail v. Astrue*, 5:09-CV-1120 (DNH/GHL), 2010 WL 3825629, at *6

(N.D.N.Y. Aug. 17, 2010) (citing SSR 96-8p, 1996 WL 374184, at *7).

As noted above, the ALJ determined that plaintiff had the RFC to perform "light work" with certain postural limitations. Under 20 C.F.R. §§ 404.1567(b) & 416.967(b), light work is defined as follows:

> [L]ifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

Social Security Ruling 83-10 elaborates on the requirements of light work:

> Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time.

SSR 83-10, 1983 WL 31251, at *5-6. *See also Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) ("The full range of light work requires intermittently standing or walking for a total of approximately 6 hours of an 8-hour workday, with sitting occurring intermittently during the remaining time.").

### 2.    Treating Physician

"Although the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, . . . the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record . . . ." *Halloran v.*

*Barnhart*, 362 F.3d 28, 32 (2004); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002);

20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The ALJ must properly analyze the

reasons that a report of a treating physician is rejected. *Halloran v. Barnhart*, 362 F.3d

at 32-33. An ALJ may not arbitrarily substitute his own judgment for competent

medical opinion. *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999).

### 3.   Credibility

"An [ALJ] may properly reject [subjective complaints] after weighing the

objective medical evidence in the record, the claimant's demeanor, and other indicia of

credibility, but must set forth his or her reasons 'with sufficient specificity to enable us

to decide whether the determination is supported by substantial evidence.'" *Lewis v.*

*Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (citation omitted). To satisfy the

substantial evidence rule, the ALJ's credibility assessment must be based on a two-step

analysis of pertinent evidence in the record. *See* 20 C.F.R. §§ 404.1529, 416.929; *see*

*also Foster v. Callahan*, No. 96-CV-1858 (RSP/GJD), 1998 WL 106231, at *5

(N.D.N.Y. Mar. 3, 1998).

First, the ALJ must determine, based upon the claimant's objective medical

evidence, whether the medical impairments "could reasonably be expected to produce

the pain or other symptoms alleged . . . ." 20 C.F.R. §§ 404.1529(a), (b); 416.929(a),

(b). Second, if the medical evidence alone establishes the existence of such

impairments, then the ALJ need only evaluate the intensity, persistence, and limiting

effects of a claimant's symptoms to determine the extent to which they limit the

claimant's capacity to work. 20 C.F.R. §§ 404.1529(c), 416.929(c). When the

objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

**B.      Application**

**1.      RFC/Treating Physician**

Plaintiff argues that the ALJ did not properly weigh the medical evidence in the record, resulting in an RFC that is not supported by substantial evidence.  This court disagrees.

In reaching the RFC determination, the ALJ gave "great weight" to the June 4, 2012 opinion of consultative examiner Dr. Elke Lorensen, who opined that plaintiff had moderate restrictions for bending, lifting, ambulating and climbing stairs. (T. 32, 419). Dr. Lorensen did not identify any limitations on plaintiff's ability to sit or stand. (T. 419).  During the examination, plaintiff reported that she cooked five times a week, and shopped once a week. (T. 417).  She reported that she could not do laundry due to problems lifting. (*Id*.).  Dr. Lorensen found that plaintiff's cervical spine had full

flexion, full extension, full lateral flexion bilaterally, and full rotary movement bilaterally. (T. 418). Plaintiff's range of motion in the lumbar spine was more limited, with flexion of 80 degrees, extension of 10 degrees, lateral flexion of 10 degrees bilaterally, and rotation of 10 degrees bilaterally. (*Id.*). Straight leg raise was negative bilaterally.[2] (*Id.*). The ALJ relied on these findings to conclude that plaintiff may have some limitations for bending or squatting, and incorporated those limitations into the RFC assessment. (T. 31).

Plaintiff had full range of motion in the shoulders, elbows, forearms, wrists and ankles. (T. 418). She had no muscle atrophy, no sensory deficits, and she retained full strength in her upper and lower extremities. (T. 418). Plaintiff's hand and finger dexterity were intact, and she had full grip strength bilaterally. (T. 419). Based on these findings, the ALJ concluded that plaintiff was able to use her hands and arms for handling, reaching, and fine manipulation without limitations. (T. 31).

Plaintiff did not appear to be in any acute distress during the consultative examination, and could get on and off the examination table without assistance. (T. 417). With some difficulty, plaintiff was able to rise from a chair without using a cane or other assistance. (T. 417). Dr. Lorensen described plaintiff's gait as "not quite normal," with a left knee wobble when she walked without a cane. (T. 417). With a cane, plaintiff's gait was normal, and Dr. Lorensen opined that the cane was medically necessary. (T. 417). Plaintiff had some difficulty walking on heels and toes. (T. 417).

---

[2] Positive straight leg raise results are indicative of a herniated disc. http://www.webmd.com/a-to-z-guides/straight-leg-test-for-evaluating-low-back-pain-topic-overview.

The ALJ compared these findings to plaintiff's treatment records prior to and after the consultative examination and could not find any other documentation of an abnormal gait or any other evidence that a cane was medically necessary since the alleged onset date. (T. 31). Therefore, the ALJ rejected Dr. Lorensen's opinion that plaintiff required use of a cane, and concluded that plaintiff's gait during the consultative examination "was not an accurate reflection of her general condition." (T. 31, 33).

The ALJ cited clinical findings from 2011 and 2012 that supported his analysis of Dr. Lorensen's opinion. (T. 30). During a June 6, 2011 evaluation of plaintiff's back pain, Dr. Mahendar Goriganti, a former treating physician, found that plaintiff had a normal gait and was able to walk on her tiptoes and heels. (T. 30, 271). A June 14, 2011 examination by Dr. Goriganti showed "fairly functional, painful range of motion of her lumbar spine," but full strength and a normal gait. (T. 30, 270). Dr. Goriganti found a "functional, pain free range of motion" of the lumbar spine on July 18, 2011. (T. 30, 269). The ALJ also noted that during an August 30, 2011 visit with Dr. Goriganti, plaintiff reported that she was "currently stable, functional and pain free with the current treatment regimen." (T. 30, 268). Plaintiff's balance was "fairly good" and she was able to walk on her tiptoes and heels. (*Id*.). Plaintiff reported "no significant change" during an October 24, 2011 visit, and Dr. Goriganti reported that plaintiff was able to walk on tiptoes and heels and had "functional, pain free range of motion" of the lumbar spine. (T. 30, 266). Reports from Chittenango Medical and Wellness Associates dated February 22, 2012 described "some pain" in plaintiff's lower back with extension/flexion/lateral rotation of the spine, but full range of motion in all

extremities. (T. 30, 297). During a September 17, 2012 examination at the same facility, plaintiff had a normal gait, despite reports of right knee pain. (T. 31, 450-52).

The ALJ also cited diagnostic imaging reports from 2010 (when plaintiff was working full time) and 2012, that did not show any significant change in plaintiff's back problems. (T. 30). A February 4, 2010 MRI report showed degenerative changes at multiple levels of the lumbar spine and bulging discs at the L3-L4 and L4-L5 level with no stenosis. (T. 30, 236-37). Dr. Dominick Adornato, Jr., who saw plaintiff for a neurosurgical consultation on March 26, 2010, reported that lumbar spine x-rays did not show any abnormality, and that a CT scan of plaintiff's lumbar spine showed mild bulging discs at L3-L4 and L4-L5 as well as a small synovial cyst[3] on the right at L4-L5. (T. 238). On July 8, 2010, Dr. Scott Gingold evaluated plaintiff's MRI results and found mild disc desiccation at L3-L4 and L4-5. (T. 244). There were no disc herniations, central canal stenosis, or foraminal stenosis. (*Id.*). Dr. Gingold concluded that the small synovial cyst on the left did not cause any nerve root compression. (T. 30, 244). Plaintiff's most recent MRI was performed on June 26, 2012. (T. 480). Dr. Robert T. Friedman, who became plaintiff's treating physician in November 2012, described the MRI results as showing mild degenerative disc disease and some facet disease at L3-L4 and L4-L5. (T. 480, 492). Dr. Friedman found nothing on the MRI that would warrant evaluation by a surgeon. (T. 493).

---

[3] A synovial cyst is a fluid-filled sac that develops as a result of degeneration in the spine. It is typically a benign condition, and the symptoms and level of pain or discomfort may remain stable for many years. http://www.spine-health.com/conditions/spinal-stenosis/synovial -cyst-lumbar-spine.

While the ALJ considered Dr. Friedman's treatment notes as part of the RFC assessment, he assigned little weight to Dr. Friedman's Medical Source Statement dated April 15, 2013. (T. 32, 489-91). In that report, Dr. Friedman opined that plaintiff could only sit for thirty minutes and stand for fifteen minutes at one time before needing to get up, walk around or otherwise change position. (T. 489). Dr. Friedman further opined that plaintiff could only sit for about four total hours and stand/walk for about four total hours during an eight-hour workday, and would require a job that permitted shifting positions at will from sitting, standing, or walking. (T. 490). According to Dr. Friedman, plaintiff could only occasionally lift ten pounds, and could never lift twenty pounds. (*Id.*). She could only occasionally twist, bend, stoop, or climb stairs, and could never climb ladders. (*Id.*). Dr. Friedman concluded that plaintiff would be off task more than twenty percent of the time during an eight-hour workday, and would need to take unscheduled breaks approximately every thirty to sixty minutes. (T. 491).

Plaintiff contends that the ALJ erred in discounting Dr. Friedman's opinion, and failed to provide good reasons for doing so. (Pl.'s Br. at 14-16). However, a review of the ALJ's determination shows that he provided several reasons for assigning the Medical Source Statement little weight, and this court concludes that the ALJ's evaluation of the treating physician's opinion was supported by substantial evidence.

First, the ALJ noted that Dr. Friedman first saw plaintiff in November 2012, more than a year after her alleged onset date. (T. 32). The regulations provide that treating physicians' opinions are generally given more weight due to the nature and extent of their relationship with the plaintiff. 20 C.F.R. §§ 404.1527(c)(2),

416.927(c)(2). The longer that the physician has treated a patient, the more that he or she will be aware of the "longitudinal picture" of the plaintiff's impairment(s). *Id.* If a physician does not have that perspective due to the short length of treatment, the ALJ does not necessarily need to afford the physician's opinion greater weight. Accordingly, the ALJ was justified in considering the short term and the timing of Dr. Friedman's treatment as a factor in the analysis of the weight given to his opinion. Such consideration was appropriate in this case, given the other medical evidence in the record, which dates back several years and generally showed no significant deterioration of plaintiff's condition.

Second, Dr. Friedman's restrictive findings in the Medical Source Statement were inconsistent with his own treatment notes. (T. 32). The ALJ noted that the only abnormal findings documented in Dr. Friedman's notes were flattening of the lumbar lordosis[4] (T. 475) and moderate tenderness. (T. 493). The MRI results reviewed by Dr. Friedman showed mild degenerative joint disease that had not significantly changed from 2010. (T. 32, 236-38, 492). Since becoming plaintiff's treating physician, Dr. Friedman had not suggested any changes in plaintiff's medication or made any clinical findings different from plaintiff's previous physicians. (T. 476, 481). The only significant new test during this period was a November 12, 2012 nerve conduction study to evaluate pain that plaintiff reported was radiating into her right leg. (T. 473). Dr. Friedman reviewed these test results and described them as "normal." (T. 492). The

---

[4] Lordosis is the inward curve of the lumbar spine. https://www.nlm.nih.gov/medlineplus/ency/article/003278.htm.

Medical Source Statement itself was a check-box form that did not provide any explanation for the inconsistency between plaintiff's treatment record and the restrictive limitations described by Dr. Friedman. (T. 489-91).

In evaluating Dr. Friedman's opinion, the ALJ also considered plaintiff's part-time employment as a home health aide for a quadriplegic patient. (T. 32). Her responsibilities included getting the patient in and out of bed and putting him in a wheelchair. (T. 32, 202). Plaintiff testified that she used a ceiling lift and was not physically lifting him by herself, but that this work put "a lot of strain" on her back. (T. 51). In light of the December 20, 2012 work history report in which plaintiff described her job duties as cleaning the patient's house and frequently lifting twenty to twenty-five pounds, the ALJ concluded that Dr. Friedman's restrictive March 13, 2013 opinion was not an accurate reflection of her abilities. (T. 32). Plaintiff contends that consideration of this part-time employment was an error requiring remand. (Pl.'s Br. at 16). However, consideration of part-time employment is appropriate, even where it would not qualify as substantial gainful activity, because it may show the type of work that a plaintiff can perform. *House v. Comm'r of Soc. Sec.*, No. 09-CV-913 (NAM/VEB), 2012 WL 1029657, *10 (finding that RFC determination was supported in part by description of plaintiff's part-time work as a home care aide); *see also* 20 C.F.R. §§ 404.157, 416.971 (stating that even though part-time work does not constitute substantial gainful activity, it may show the type of work that plaintiff is able to do). Here, the ALJ appropriately considered the physical activities associated with plaintiff's description of her part-time employment as one factor in weighing the

medical evidence and determining plaintiff's RFC.

Plaintiff also contends that the ALJ erred by rejecting the opinion of Dr. Lorensen and Dr. Friedman that plaintiff required a cane to walk or stand. (Pl.'s Br. at 22-23). Plaintiff testified at the hearing that she had been prescribed a cane by a former treating physician, Dr. John Lalor, when her back problems first developed in 2004. (T. 58). At the time that it was prescribed, plaintiff "barely used" the cane except "for the days that . . . were really bad." *(Id.)*. Plaintiff testified that she was using it "most of the time" now because her leg would often go numb, and she needed the cane to keep from falling, but that "on my good days I don't need it but, I do keep it with me. Because I never know when it's going to happen." (T. 58).

Social Security Ruling 96-9p provides that there "must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which the assistive device is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain, and any other relevant information)." *See* SSR 96-9, 1996 WL 374185, at *7. A cane need not be prescribed to be considered medically necessary, but there must be specific medical documentation establishing the need for it and the circumstances surrounding that need. *Hoke v. Colvin*, No. 1:14-CV-663 (GTS/CFH), 2015 WL 3901807, at *14 (N.D.N.Y. June 25, 2015). Plaintiff has the burden to establish such medical necessity. *Wilson v. Comm'r of Soc. Sec.*, No. 6:13-CV-643 (GLS/ESH), 2014 WL 4826757, *10-11 (N.D.N.Y. Sept. 29, 2014). A physician's observation that a patient used a cane or had an unsteady gait does not satisfy this burden. *Hoke*, 2015

18

WL 3901807, at *14.

The record contains no documentation from Dr. Lalor regarding the cane prescription, and it appears that his office did not respond to the agency's request for plaintiff's file. (T. 440). While plaintiff notes that numerous medical records mention her use of a cane, none explain if the cane was medically necessary. (T. 326, 329. 332, 337, 340. 353, 356, 359, 372, 375, 378, 381, 387, 397, 400, 403, 409). In addition, most of these references occur prior to plaintiff's alleged onset date of June 15, 2011, when plaintiff was still working full-time. (T. 332, 337, 340, 353, 356, 359, 372, 375, 378, 381, 387, 397, 400, 403, 409). The ALJ reviewed plaintiff's treatment records from 2012, and noted that eyeglasses were the only assistive device listed. (T. 33, 288, 295, 299, 450, 457, 460). In addition, the ALJ noted the numerous medical findings, with the exception of Dr. Lorensen's consultative exam, that plaintiff exhibited a normal gait and good balance when walking. (T. 33, 240, 244, 267, 271, 451). Because plaintiff failed to meet her burden, and the ALJ considered the available medical evidence regarding the need for assistive devices in accordance with SSR 96–9p, his conclusion that plaintiff's cane was not medically necessary was supported by substantial evidence. *Hoke*, 2015 WL 3901807, at *14. Accordingly, the ALJ's RFC determination that plaintiff could perform light work, and his step 4 and step 5 determinations, did not need to account for plaintiff's use of a cane.

In reaching his RFC determination, the ALJ also gave "some weight" to the opinion of Christopher J. Winterstein, a physician's assistant ("PA") working for plaintiff's primary care provider, who examined plaintiff in December 2011 and

reported that "[p]er patient's request I have cleared her to work as I find no reason why she cannot following today's examination." (T. 31, 305). The physical examination included an assessment of plaintiff's back pain. (T. 305). The report was also made with knowledge of plaintiff's part-time employment as a home care aide, and referenced plaintiff transferring the quadriplegic patient into and out of his wheelchair with a lift. (T. 303). Plaintiff argues that the ALJ erred in assigning PA Winterstein's opinion some weight, particularly when the ALJ assigned little weight to the opinion of Dr. Friedman, a treating physician. (Pl.'s Br. at 17). While PA Winterstein is not an acceptable medical source under the regulations, the ALJ was entitled to rely on his professional assessment of the severity of plaintiff's impairment and the resulting functional effects. *Luffman v. Comm'r of Soc. Sec.*, No. 7:12-CV-317 (NAM/ATB), 2013 WL 1386639, at *7 (N.D.N.Y. Mar. 14, 2013) (finding that ALJ could rely upon physical therapist's opinion). PA Winterstein did not diagnose plaintiff with any particular condition, but rather evaluated the severity of plaintiff's impairments and how it affected her ability to perform work-related activities. (T. 303-06). This is consistent with the regulations discussing "Medical and other evidence of your impairment(s)," which state that medical doctors are sources who can provide evidence to establish an impairment, and PAs are "other sources" whose opinions can help show the severity of an established impairment and how it affects one's ability to work. 20 C.F.R. § 404.1513(a), (d). Thus, the ALJ was entitled to rely on PA Winterstein's assessment of plaintiff's functional limitations, and had the discretion to determine the appropriate weight to accord his opinion based on all the record evidence. *McQuade v.*

*Colvin*, No. 3:14-CV-1044 (GTS), 2015 WL 7283185, *8 (N.D.N.Y. Nov. 16, 2015).

It is the province of the ALJ to resolve genuine conflicts in the record. *Veino v. Barnhart*, 312 F.3d at 588.  However, the Commissioner need not "reconcile explicitly every shred of medical testimony." *Galiotti v. Astrue*, 266 F. App'x 66, 66 (2d Cir. 2008) (citing *Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983)).  Here, the ALJ resolved conflicts between the various medical opinions by assigning the greatest weight to those opinions that he deemed most consistent with plaintiff's overall treatment record and activities.  In doing so, the ALJ appropriately evaluated the conflicting medical evidence, and made an RFC finding that was consistent with the overall record.  *See Matta v. Astrue*, 508 F. App'x. 53, 56 (2d Cir. 2013) (although ALJ's conclusion did not perfectly correspond with any of the opinions of medical sources, ALJ was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole).

As noted above, at step four, the ALJ found that plaintiff was able to perform her past relevant work, from 1997 to 2000, as a cashier at a retail store because that prior work was classified as light, semi-skilled work in the Dictionary of Occupational Titles ("DOT").  (T. 33).  The ALJ also found that plaintiff was able to perform her past relevant work as a retail store manager, a position that she held from 2007 to 2011, because the DOT classifies that position as light, skilled work.  (*Id*.).  Because the ALJ's RFC determination was supported by substantial evidence, the ALJ's finding that the plaintiff was able to perform her past relevant light work and that, therefore, she was not disabled, was also supported by substantial evidence.

## 2. Credibility

Plaintiff contends that the ALJ failed to adequately consider plaintiff's subjective complaints of pain, her testimony that her condition had deteriorated, and the resulting limitations on her daily activities. (Pl.'s Br. at 18-19). This court disagrees, and concludes that the ALJ's credibility determination was supported by substantial evidence.

The ALJ did not dispute the existence of plaintiff's physical or mental impairments, but concluded that plaintiff's description of the functional limitations caused by those impairments was inconsistent with the record evidence. (T. 38-39). The ALJ has the discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant. *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir.1979). If the findings "are supported by substantial evidence, the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain." *Aponte v. Secretary, Dep't of Health & Human Services*, 728 F.2d 588, 591 (2d Cir.1984). Here, the ALJ compared plaintiff's testimony to her own reports regarding her functional limitations and work responsibilities, the diagnostic imaging reports in the record, the clinical findings of plaintiff's treating physicians and other medical providers, and the medical opinion evidence. (T. 29-33). In light of the documented inconsistencies between plaintiff's description of her symptoms and the record evidence evaluated and cited by the ALJ, the ALJ's credibility determination was supported by substantial evidence.

## VII. **VOCATIONAL EXPERT**

### A.    **Legal Standards**

At step five of the disability analysis, the burden shifts to the ALJ to demonstrate that there is other work in the national economy that plaintiff can perform. *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009). "Work which exists in the national economy" means work existing in significant numbers "either in the region where the individuals live or in several regions of the country." *McCusker v. Comm'r of Soc. Sec.*, No. 1:13-CV-1074, 2014 WL 6610025, at *3 (N.D.N.Y. Nov. 20, 2014) (quoting SSR 82-53, 1982 WL 3134, at *3 (1982) (internal quotation marks removed). This definition emphasizes "that . . . a type[] of job which exists only in very limited numbers or in relatively few geographic locations may not be said to 'exist in the national economy.'" *Id.* However, what constitutes a "significant" number is "fairly minimal." *Id.* (quoting *Fox v. Comm'r of Soc. Sec.*, No. 6:02-CV-1160, 2009 WL 367628, at *20 (N.D.N.Y. Feb. 13, 2009)).

In the ordinary case, the ALJ carries out this fifth step of the sequential disability analysis by applying the applicable Medical-Vocational Guidelines ("the Grids"). *Id.* The Grids divide work into sedentary, light, medium, heavy, and very heavy categories, based on the extent of a claimant's ability to sit, stand, walk, lift, carry, push, and pull. 20 C.F.R. Pt. 404, Subpt. P, App. 2; *Zorilla v. Chater*, 915 F. Supp. 662, 667 n.2 (S.D.N.Y. 1996). *See also* 20 C.F.R. §§ 404.1567 & 416.967. Each exertional category of work has its own Grid, which then takes into account the plaintiff's age, education, and previous work experience. *Id.* Based on these factors, the Grids help the ALJ

determine whether plaintiff can engage in any other substantial work that exists in the national economy. *Id.*

"Although the grids are 'generally dispositive, exclusive reliance on [them] is inappropriate' when they do not fully account for the claimant's limitations." *Martin v. Astrue*, 337 F. App'x 87, 90 (2d Cir. 2009) (citation omitted). When significant nonexertional impairments[5] are present or when exertional impairments do not fit squarely within Grid categories, the testimony of a vocational expert is required to support a finding of residual functional capacity for substantial gainful activity. *McConnell v. Astrue*, 6:03-CV-0521 (TJM), 2008 WL 833968, at *21 (N.D.N.Y. Mar. 27, 2008) (citing, *inter alia*, *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986).

"If a claimant has nonexertional limitations that 'significantly limit the range of work permitted by his exertional limitations,' the ALJ is required to consult with a vocational expert[,]" rather than relying solely on the Grids. *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (*citing Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986)). The mere existence of a nonexertional impairment does not automatically require consultation with a vocational expert, nor does it preclude reliance on the Guidelines. *Bapp v. Bowen*, 802 F.2d at 603. The requirement for a vocational expert is triggered when a nonexertional impairment causes an "additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." *Id*. at 605-06. The

---

[5] A "nonexertional" limitation is a limitation or restriction imposed by impairments and related symptoms, such as pain, that affect only the claimant's ability to meet the demands of jobs other than the strength demands. 20 C.F.R. §§ 404.1569a(c), 416.969a(c).

appropriateness of applying the Grids and the necessity for expert testimony must be determined on a case-by-base basis. *Id*. at 605.

## B. Application

As discussed above, the ALJ determined at step four that plaintiff could perform her past relevant work, and therefore was not disabled. (T. 33). However, the ALJ still proceeded to step five, and made the alternative finding that there were other jobs existing in the national economy that plaintiff could also perform. (T. 34-35). Plaintiff argues that the ALJ erred at step four and step five by failing to utilize the services of a VE because plaintiff had significant non-exertional impairments, including the use of a cane, difficulty maintaining attention and concentration, and anxiety. (Pl.'s Br. at 20-23). This court disagrees.

The ALJ considered the alleged medical necessity of plaintiff's cane, and rejected it, as part of the RFC analysis. (T. 33). The ALJ also considered plaintiff's mental impairments, and concluded that these caused no more than minimal limitation in plaintiff's ability to perform basic mental work activities, and were therefore non-severe. (T. 27). The ALJ reached this conclusion after considering the four functional areas found in the "paragraph B" criteria of the regulations. (T. 27-28). The ALJ found no limitations in activities of daily living, and mild limitations in the areas of social functioning and concentration, persistence, or pace. (T. 27). Plaintiff had experienced no episodes of decompensation and had never been hospitalized in connection with her anxiety or other mental impairments (T. 27-28). The ALJ's determination is consistent with the opinion of consultative psychological examiner Dr. Jeanne Shapiro, which the

ALJ assigned great weight. (T. 28, 414). Dr. Shapiro opined that plaintiff's mental impairments were not significant enough to interfere with her overall daily functioning. (T. 414). As noted by the ALJ, there were no mental status examinations from plaintiff's treating physicians in the record. (T. 27-28).

Therefore, plaintiff's only relevant nonexertional impairments were the postural limitations in the RFC regarding occasional bending, stooping, crawling, kneeling, crouching, and climbing. (T. 29). Relying on Social Security Rulings 83-14 and 85-15, the ALJ found that these postural limitations would not significantly erode the occupational base of light work, and that there were a significant number of jobs in the national economy that plaintiff could perform. (T. 34). Other district courts to consider the issue have reached the same conclusion, and found such use of the Grids to be permissible. *See Dier v. Colvin*, No. 13-CV-502S, 2014 WL 2931400, at *4 (W.D.N.Y. June 27, 2014) (citing *Carlson v. Barnhart*, No. 3:05-CV-1584, 2006 WL 2926818, at *15 (D. Conn. Aug. 30, 2006)). Likewise, in this case, plaintiff's nonexertional impairments would not require the testimony of a VE or preclude the ALJ's use of the Grids to find that plaintiff was not disabled.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the decision of the Commissioner be affirmed, and the plaintiff's complaint be **DISMISSED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS**

**WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated:        February 22, 2016

Hon. Andrew T. Baxter
U.S. Magistrate Judge